UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUSTIN CORMIER, ET AL. | *CIVIL NO. 6:15-2076 |
| VERSUS | *MAGISTRATE JUDGE HANNA |
| TURNKEY CLEANING SERVICES, LLC., ET AL. | *BY CONSENT OF THE PARTIES |

### ORDER

Before the Court is the Motion to Reconsider filed by the defendant Scottsdale Insurance Company ("Scottsdale"), which seeks reconsideration of this Court's September 28, 2016 Order entered following the September 27, 2016 hearing of Scottsdale's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [rec. doc. 157]. Plaintiff, Justin Cormier ("Cormier"), and defendant, Dale P. Martin, Jr. ("Martin"), have filed Opposition, to which Scottsdale filed a Reply. [rec. docs. 163, 164 and 165].

The Court's September 28, 2016 Order memorialized the agreement of counsel, entered during the September 27, 2016 hearing of Scottsdale's Rule 12(b)(6) Motion to Dismiss that the procedural arguments asserted in the Motion to Dismiss, namely, whether Cormier can maintain a direct action against Scottsdale because the FLSA preempts the Louisiana direct action statute, and whether an FLSA claim is a contract claim which falls outside the purview of the Louisiana direct action statute, were

withdrawn, and accordingly, the sole issue remaining before the Court for disposition is whether the Scottsdale policy excludes coverage for the FLSA wage and hour claims brought by the plaintiffs.  The September 28, 2016 Order additionally memorialized the Court's conversion of Scottsdale's Rule 12(b)(6) Motion to Dismiss to a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  [rec. doc. 156].

By this Motion, Scottsdale seeks reinstatement of its procedural arguments on grounds that it did not intend to withdraw its procedural arguments, and to the extent the counsel withdrew those arguments, counsel was without authority to do so. Scottsdale additionally seeks reversal of this Court's conversion of its Motion to Dismiss to a Motion for Summary Judgment.  Alternatively, in the event the Court maintains its prior conversion of the Motion to Dismiss to a Motion for Summary Judgment, Scottsdale seeks clarification of the scope of discovery permitted by the Court.

For the following reasons, the Motion to Reconsider [rec. doc. 157] is **denied**.

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration *per se*.  *Shield Pack, LLC v. CDF Corp.*, 2010 WL 4719431, *1 (W.D. La. 2010).  Nevertheless, motions requesting reconsideration of court orders have been construed as falling under Rule 54(b), Rule 59(e), or Rule 60(b) of the Federal Rules of Civil Procedure.  *Collins v. Brice Building Co., LLC*, 2013 WL 121655, *2 (E.D. La.

2013) (and cases cited therein).  Rules 59 and 60 apply only to final judgments.  *Id.* When a party seeks to revise an order that adjudicates fewer than all the claims among all of the parties, then Rule 54(b) controls.  *Id*.  Under Rule 54(b), the district court possesses the inherent power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.  *Id. citing* Fed.R.Civ.P. 54(b)[1].  Because the Court's September 28, 2016 Order is not a final judgment, but rather an interlocutory order that addresses the rights of fewer than all parties to this suit, Rule 54(b) governs.  Rule 54(b) motions are construed under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.  *Id.* (and cases cited therein); *Hearne v. Kansas City Southern R. Co.*, 2015 WL 5708291, *2 (W.D. La. 2015); *see also Leong v. Cellco P'ship*, 2013 WL 4009320, at *3 (W.D. La. 2013).

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004), *quoting In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002); *Shield Pack*, 2010 WL 4719431, at *1.  To prevail on a Rule 59(e) motion, the moving party must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Simon v. United States* , 891 F.2d 1154, 1159 (5th Cir. 1990).  When a party contends there has been a clear error of law or manifest injustice, "courts caution 'that

---

[1] Federal Rule of Civil Procedure 54(b) provides that an order that adjudicates fewer than all the claims among all the parties "may be revised at any time" before the entry of a final judgment.

3

any litigant considering bringing a motion on that ground should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant.'" *Arena v. Graybar Electric Company, Inc*., 2010 WL 3944942, *1 (W.D. La. 2010)*, reversed on other grounds,* 669 F.3d 214 (5th Cir. 2012 ) *quoting Atkins v. Marathon LeTourneau, Co.,* 130 F.R.D. 625, 627 (S.D. Miss. 1990) and *Durkin v. Taylor*, 444 F.Supp. 879, 889 (E.D. Va.1977) "A party seeking reconsideration must show more than disagreement with the court's decision. . . . ." *Sundaram v. Flagstar Bank FSB*, 2012 WL 5336209, *2 (S.D. Tex. 2012)*, citing Texaco Exploration & Prod., Inc. v. Smackco, Ltd.*, 1999 WL 539548, *1 (E.D. La. 1999). "Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Id. quoting Atkins,* 130 F.R.D. at 626. Moreover, Rule 59 motions should not be used to relitigate old matters, raise new arguments, or submit evidence that could have been presented earlier in the proceedings. *Templet*, 367 F.3d at 479 ; *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir.2010); *Shield Pack*, 2010 WL 4719431 at *1, *citing Templet.*

In considering a Rule 59(e) motion, Courts must attempt to strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render a just decision. *Edward H. Bohlin Co., Inc. v. Banning Co., Inc,*, 6 F.3d 350, 355 (5th Cir.

1993).  In general, reconsideration of a judgment "is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 *citing Clancy v. Employers Health Ins. Co.*, 101 F.Supp.2d 463, 465 (E.D. La. 2000) (*citing* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2810.1, at 124 (2d ed. 1995); *Shield Pack*, 2010 WL 4719431 at *1 *citing Templet*.  Accordingly, the standards which apply to Rule 59(e) Motions favor denial of such a Motion. *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

Scottsdale fails to satisfy this stringent standard.  Accordingly, Scottsdale's Motion to Reconsider is denied.  This Court's September 28, 2016 Order will remain in effect without reversal, modification, or clarification.

**Withdrawal of Procedural Arguments by Counsel**

Scottsdale argues that "there may have been a miscommunication with respect to the withdrawal of [its direct action and preemption] arguments" and that it "did not intend to withdraw these arguments. . . . " [rec. doc. 157-1, pg. 2 and 10].  Scottsdale further argues that if the arguments were withdrawn by counsel, Mr. West, it "did not authorize counsel to withdraw them." *Id.*

The Court has examined the transcript of the September 27, 2016 hearing and finds that there was no miscommunication.  During Mr. West's argument, the Court initially advised that it "was not running with [Scottsdale]" with respect to its preemption argument as the case relied upon by Scottsdale "was a different kind of

5

case." [rec. doc. 159, pg. 8]. The Court then went on to explain how the direct action statute applies in a "garden variety direct action claim." [*Id*.] However, if the direct action statute does not apply, as argued by Scottsdale in their Motion, and the case proceeded to trial solely against an insolvent defendant and a judgment was rendered against Turnkey, then Turnkey would seek coverage under the policy and the parties would "all be back here again arguing about policy defenses." [*Id*. at pg. 8-9]. Therefore, the Court proposed the following:

> So kind of from a judicial efficiency standpoint - - and I believe there is case law, and I'm sure the plaintiffs are going to tell me about it, that says that an FLSA case does have a tort element to it, albeit an intentional tort. So, I'll tell you that my inclination at this point, unless you want to persuade me otherwise, is that there is enough authority to say they can bring the claim, which allows me to address the policy language itself. And I don't think preemption applies. That was a different context.

[*Id*. at pg. 9].[2]

The Court then expressly asked Mr. West, "Do you have a big problem with that result, Mr. West?" [*Id*.]. Mr. West responded clearly and without hesitation, "I do not, Your Honor." [*Id*.].

The Court then expressly asked plaintiffs' counsel, "Well, you heard what I just

---

[2]In the current motion, Scottsdale points out that the contemplated discovery by the plaintiffs would needlessly erode the policy limits leaving less potential benefits to the class members. If this case proceeded against an insolvent defendant through trial and then through a subsequent garnishment action on the policy in the event an adverse judgment was rendered against Turnkey, no doubt the policy limits would be far more significantly eroded than they would should limited discovery take place on the policy defenses themselves at this stage of the litigation.

6

said to Mr. West.  Do you agree with that?" [*Id*. at 10].  Plaintiffs' counsel likewise agreed. [*Id*.].

The Court then re-confirmed:

> I think I can justify it with the jurisprudence, but if everybody is kind of okay with that - - I mean, we might as well get to the meat of the coconut instead of go have a trial against an insolvent defendant and come back here and argue the same thing.

[*Id*.].

During this entire colloquy, Mr. West voiced no objection.  To the contrary, he expressly agreed with the Court's proposal thereby waiving Scottsdale's procedural arguments, which were unique to the procedural posture of this case given that the plaintiffs and not Turnkey had sued Scottsdale, so that the Court could resolve the ultimate question, that is, whether the Scottsdale policy excludes coverage for wage and hour claims.  Indeed, had counsel not waived Scottsdale's procedural claims, the Court would have, as advised, simply rejected those arguments for the reasons stated by the Court on the record.[3]

Further, although Scottsdale now argues that its counsel, Mr. West, was without authority to waive its procedural claims, that argument fails to meet the stringent

---

[3]Interestingly, by Reply Scottsdale's counsel states that he was acknowledging the Court's rejection of Scottsdale's procedural arguments rather than agreeing to withdrawal of same. [rec. doc. 165-1, ¶5].

7

standard required for this Court to reconsider its September 28, 2016 Order. More specifically, Scottsdale fails to demonstrate that this Court has committed a manifest error of law or fact, or that there has been any manifest injustice.[4] Insurers, like other corporate and business entities, must appear in court through counsel. *See* Rule 83.2.5 of the Local Rules of the United States District Court for the Western District of Louisiana ("[i]n all cases before this court, any party who does not appear in proper person must be represented by a member of the bar of this court. . . ."); 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel. . . ."); *see also Rowland v. California Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194, 202-203 (1993) ("It has been the law for the better part of two centuries. . . that a corporation may appear in the federal courts only through licensed counsel. . . the rationale for that rule applies equally to all artificial entities."). Accordingly, this Court must be able to rely on the representations of counsel appearing in open court on behalf of such clients. *See Davidson v. Georgia Pacific, LLC,* 2014 WL 801342, * 5 (W.D. La. 2014), *citing Police Jury of Tangipahoa Parish v. Begnaud*, 9 So.2d 399, 401 (La. 1942) ("It is not to be presumed that an attorney at law who appears in court as the representative of a client is acting without authority."). This aspect of Scottsdale's motion is therefore denied.

---

[4]Scottsdale has likewise not demonstrated that there been an intervening change in the law to justify reconsideration, nor does the Court consider Mr. West's affidavit as new evidence contemplated by the Rules necessitating reconsideration.

**Conversion of Scottsdale's Motion to Dismiss**

Scottsdale argues that this Court was not required to convert its Motion to Dismiss to a Motion for Summary Judgment as this Court may consider the policy on a Motion to Dismiss because the policy is referred to in the plaintiffs' second amended complaint and is central to their claim. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000). Accordingly, because this Court has the authority to resolve this dispute on a Motion to Dismiss, Scottsdale argues that it should exercise that authority. Nevertheless, as acknowledged by Scottsdale in its Reply,[5] under Rule 12(d) this Court has complete discretion to determine whether or not to accept any material beyond the pleadings and thereby convert a Motion to Dismiss to a Motion for Summary Judgment. *See Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n. 3 (5th Cir.1988); *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414–15 (5th Cir. 1980); *see also Crowe v. Hoffman*, 2013 WL 357006, *1 (E.D. La. 2013).

Scottsdale essentially now argues, as it did in its Motion to Dismiss, that its policy language is clear and unambiguous and unequivocally excludes coverage for the plaintiffs' claims. Thus, extrinsic evidence was unnecessary to resolve the coverage issue. Cormier and Martin disagree. In their Opposition to both the original Motion

---

[5]*See* rec. doc. 165, pg. 2 "This Court undoubtedly has the discretion to convert Scottsdale's Motion under Rule 12(d)...."

and the instant Motion for reconsideration, both Cormier and Martin argue that the policy language is ambiguous and leads to absurd results. Both requested reasonable discovery to resolve these ambiguities.

The Louisiana Supreme Court long ago succinctly set forth the obligation of this Court:

> The purpose of liability insurance is to afford the insured protection from damage claims. Insurance contracts, therefore, should be interpreted to effect, not deny, coverage. . . The extent of coverage is determined from the intent of the parties as reflected by the words of the insurance policy. The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the insured and insurer as reflected by the words in the policy. . . When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written and may make no further interpretation in search of the parties' intent.
>
> Words in an insurance contract are to be given their generally prevailing and ordinary meaning, unless they have acquired a technical meaning. . . Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. . . . An insurance contract is construed as a whole and each provision in the policy must be interpreted in light of the other provisions so that each is given meaning. One portion of the policy should not be construed separately at the expense of disregarding other provisions. . . . An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. . . . That is, the rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. . . If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who

furnished the policy's text and in favor of the insured finding coverage. *Peterson v. Schimek,* 98-1712, 729 So.2d 1024, 1028-1029 (La. 3/2/99) (citations omitted)

During the September 27, 2016 hearing, the Court examined the policy language including the definitions. Specifically, the definitions contained in the "Employment Practices Coverage Section" of Scottsdale's Business and Management Indemnity Policy are as follows:

> 4. **Employees** means any person who was, now is or shall become:
> a. a full-time or part-time employee of the **Company**, including interns, voluntary seasonal and temporary employees;
> b. any individual who applies for employment with the **Company**; and
> c. any natural person who is a leased employee or is contracted to perform work for the **Company**, or are independent contractors of the **Company**, but only to the extent such individual performs work or services for or on behalf of the **Company**.[6]
>
> * * * *
>
> 7. **Insured Persons** means all persons who were, now are or shall become:
> a. a director or officer of the **Company**[7];
> b. any **Employee**; and
> c. the functional equivalent of a director, officer or **Employee** in the event the Company is incorporated or domiciled outside the United States.
> 8. **Insureds** means the **Company** and any **Insured Persons**.

The insuring clause found in Endorsement 36 provides coverage for "**Costs, Charges and Expenses** of the **Insureds** which the **Insureds** have become legally

---

[6]This definition is contained in Endorsement No. 3. of Scottsdale's policy and alters the original definition to include interns.

[7]Endorsement 4 of Scottsdale's policy adds members of the management board and management committee.

11

obligated to pay by reason of a **Wage and Hour Claim** . . . for a **Wage and Hour Wrongful Act**. . ."

Applying these definitions to the insuring clause, Scottsdale would be required to pay costs, charges, and expenses to the Company (Turnkey) and any persons who "were, now are or shall become" directors, officers, full or part-time employees, interns, voluntary and seasonal and temporary employees, as well as any person "who was, now are or shall become an individual who applies for employment" if the costs, charges, and expenses were incurred by reason of a Wage and Hour Claim for a Wage and Hour Wrongful Act.  In short, every person who ever was a company employee or officer – or ever was to apply to become an employee or a director or officer – could be an "Insured" under this section of the policy – even people not normally considered "employees" when the term is given its usual meaning, rendering the definitions capable of multiple meanings.

The "Directors and Officers and Company Coverage Section" of the same policy, contains the following definitions:

> 4. **Directors and Officers** means any person who was, now is, or shall become:
> a. a duly elected or appointed director, officer or similar executive of the **Company**, or any member of the management board of the **Company**;
> b. a person who was, is or shall become a full-time or part-time employee of the **Company**; and
> c. the functional equivalent of directors or officers of a **Company**

incorporated or domiciled outside the United States of America.[8]
5. **Insured** means the **Company** and the **Directors and Officers**.

Thus, every person who "was, is or shall become a full-time or part-time employee" of the Company is not only a Director or Officer, but an Insured. If Directors and Officers were intended to include every past and future and possible full or part-time employee, then the generally recognized and accepted need for Directors and Officers insurance coverage would be rendered meaningless. Further, since the "Insured" purportedly agreed to this policy language, then the insured would include every past and future employee, i.e. all the plaintiffs in this collective action, and all would have had to agree – a point this Court finds highly unlikely as to Scottsdale's intent.

At the September 27, 2016 hearing, this Court stated that it "found it puzzling that a D&O policy would include every employee that there is as a D&O." The Court had "never seen a definition like this and it troubles me" and that the Court was therefore "in unchartered waters." [rec, doc. 159, pg. 11 and 23].

The Court thus preliminarily suggested that the policy could be construed as ambiguous and could be read to lead to absurd results. Since by Scottsdale's interpretation of its own definition, every past or future employee could be an

---

[8]Endorsement 19 expands this definition to include other persons not pertinent to this Court's analysis at this point.

"Insured," whether under the Employment Practices section or the Directors and Officers section, this Court determined that it would accept matters outside the pleadings of this collective action and determine the issues under the rules applicable to summary judgment motions.[9] [10] [*See Id.* at pg. 22].

By this Motion, without providing anything which was not available prior to this Court's September 28, 2016 Order, Scottsdale merely reasserts its prior arguments that the policy clearly and unequivocally excludes coverage and that extrinsic evidence is

---

[9] It is well settled that a court may consider extrinsic evidence to determine the intent of the parties to an insurance contract if the policy language is ambiguous. *Entergy Louisiana, Inc. v. National Union Fire Ins. Co. of Pittsburgh,* 1999 WL 599314, *1 (E.D. La. 1999); *Fontenot v. Diamond B. Marine Services, Inc.*, 937 So.2d 425, 428-429 (La. App. 4th Cir. 2006) *citing Highlands Underwriters Ins. Co. v. Foley*, 691 So.2d 1336, 1340-1341 (La. App. 1st Cir. 1997); *Patterson v. City of New Orleans*, 686 So.2d 87, 90 (La.App. 4th Cir.1996)*; St. Paul Fire & Marine Ins. Co. v. Pahm*, 2007 WL 1466747, *3 (M.D. La. 2007) *citing Breland v. Shilling*, 550 So.2d 609, 610-611 (La. 1989) *citing* La. C.C. art. 2045 (Ambiguity may also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.); *see also Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 428-429 (5th Cir. 1996) (upon finding a term of the contract ambiguous the court will consider extrinsic evidence in interpreting its meaning). Indeed, in situations of ambiguity where extrinsic evidence was not considered, the Fifth Circuit has ordered cases remanded to allow consideration of the extrinsic evidence in determining the meaning of an ambiguous provision. *Lightfoot v. Hartford Fire Ins. Co.,* 2012 WL 1014985, *3 (E.D. La. 2012) *citing Hettig & Co. v. Union Mut. Life Ins. Co.*, 781 F.2d 1141, 1143, 1146 (5th Cir. 1986) and *City of El Paso v. El Paso Entertainment, Inc.*, 382 Fed. Appx. 361, 368 (5th Cir. 2010).

[10] Moreover, the Declarations section of the policy provides:

> These Declarations, together with the Application, Coverage Sections, General Terms and Conditions and any written endorsement(s) attached thereto, shall constitute the contract between the **Insured** and the **Insurer**."

There was no Application attached as an exhibit to the policy, thereby presenting yet another ambiguity.

14

unnecessary, arguments which were previously considered and rejected by this Court. Although Scottsdale disagrees with this Court's determination that the Motion will be converted and determined under the standards applicable to summary judgment motions after an adequate opportunity for discovery, such disagreement does not present a clear error of law or fact, nor manifest injustice. Scottsdale's request for an additional chance to sway the Court is simply not appropriate. *See Arena* quoting *Atkins* and *Durkin; Sundaram* citing *Texaco Exploration & Prod., Inc.* and *Atkins, supra.*

**Request for Clarification**

The Court also need not clarify the scope of discovery which will be permitted in the context of this Motion to reconsider. As previously stated during the September 27, 2016 hearing,[11] the Court will address the nature and scope of the discovery which will be permitted after considering the Rule 56(d) and Rule 12(d) submissions of the parties. Since the Court has not yet had sufficient opportunity to consider the submissions of the parties, Scottsdale's request for clarification is premature.

Signed this 14th day of November 2016, at Lafayette, Louisiana.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[11]During the September 27, 2016 hearing, the Court told the parties, "When you tell me what you need, I'll let you know what you can have." Interestingly, Mr. West responded, "That's fair, Your Honor." [rec. doc. 159, pg. 23].